***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser, and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Houser, with modifications.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and in the Pre-Trial Agreement, which was admitted into the record and marked as Stipulated Exhibit (1) as:
 STIPULATIONS *Page 2 
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between plaintiff-employee and defendant-employer on or about June 25, 2006, the date of the alleged injury.
3. The carrier liable on the risk is correctly named above.
4. Plaintiff alleges to have sustained an injury to his right-foot and ankle, which defendants accepted as compensable pursuant to an Industrial Commission Form 60 dated
October 18, 2006.
5. Plaintiff's average weekly wage is $1,242.24, resulting in the maximum compensation rate for 2006 of $730.00.
6. At the hearing, the parties submitted the following Two Packets of Various Stipulated Exhibits, which were admitted into the record and marked as Stipulated Exhibits (2A) and (2B) and which included the following:
 a. Industrial Commission Forms and Filings;
 b. Discovery Responses;
 c. Nurse Case Manager related Documents;
 d. Medical Records and;
 e. Job Search Sheets.
7. Also made part of the record is the deposition of Dr. Douglas Frank Messina.
 *********** ISSUE TO BE DETERMINED
Whether payments to Plaintiff of ongoing total disability compensation should be suspended given that, on February 24, 2010, Plaintiff was released by his authorized treating physician with physical limitations but no assigned work restrictions. *Page 3 
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the date of the hearing before the Deputy Commissioner, Plaintiff was 42 years of age, having a date of birth of April 27, 1968. Plaintiff is a high school graduate and is certified in Mechanical Repairs and as a Diesel Technician/Mechanic.
2. Plaintiff began working for Defendant-Employer as a Diesel Technician/Mechanic in June of 1993. Defendant-Employer is a corporation with global presence, and has a diesel repair shop in Wilmington, North Carolina doing business as "Covington Detroit Diesel."
3. On June 23, 2006, Plaintiff sustained an injury by accident arising out of and in the course of his employment with Defendant-Employer when he was involved in a motor vehicle accident. As a result of this accident, Plaintiff sustained an open fracture of his tibia and fibula on his right lower extremity.
4. Defendants accepted the compensability of Plaintiff's motor vehicle accident by filing an Industrial Commission Form 60 Employer's Admission of Employee's Right to Compensation dated October 18, 2006. Pursuant to that Form, Defendants accepted as compensable, injuries to Plaintiff's right foot and ankle. Also pursuant to the Form 60, Defendants paid Plaintiff ongoing total disability compensation beginning June 24, 2006.
5. On the date of his accident, Plaintiff was transported by ambulance to the emergency room at New Hanover Regional Medical Center, where he was treated by Dr. Douglas Frank Messina. Plaintiff was diagnosed as having comminuted distal tibia and fibula *Page 4 
fractures, meaning the affected bones were splintered or crushed. Immediately thereafter, Plaintiff underwent a debridement and received an external fixator using pins and bars to hold his bones in stable alignment. This procedure was performed by Dr. Messina.
6. On July 17, 2006, Plaintiff underwent a second surgery, also performed by Dr. Messina, which involved an open reduction and internal fixation of his fractures with the removal of the external fixator. Following the procedure, Dr. Messina provided Plaintiff with conservative treatment and referred him to physical therapy.
7. On October 30, 2006, Dr. Messina released Plaintiff to return to light-duty work four hours per day. Additionally, pursuant to a functional capacity evaluation, Dr. Messina restricted Plaintiff's frequency of standing, walking, squatting and carrying to 80% of the work day. Plaintiff's light-duty work for Defendant-Employer was primarily administrative in nature.
8. Upon to returning to light-duty work with Defendant-Employer, Plaintiff earned less than his pre-injury wages and was paid by Defendants temporary partial disability compensation.
9. On August 15, 2007, Dr. Messina opined that Plaintiff had reached maximum medical improvement and assigned a fifteen percent (15%) permanent partial disability rating to his right foot. Additionally, Dr. Messina released Plaintiff to return to work at full-duty, performing his pre-injury duties.
10. Thereafter, also in August 2007, Plaintiff returned to work for Defendant-Employer in his former position as a certified diesel technician.
11. Subsequent to returning to work full-time, Plaintiff began experiencing pain and swelling in his right ankle and returned to Dr. Messina in July 2009. On August 14, 2009, Dr. Messina preformed a third surgery on Plaintiff, during which the previously implanted hardware *Page 5 
was removed due to an infection which had developed around the plate in Plaintiff's right ankle. Following his August 2009 surgery, Plaintiff participated in physical therapy and a work hardening program.
12. In connection with his August 14, 2009 surgery, Plaintiff was again medically excused from work, and payments of ongoing of temporary total disability compensation were reinstated by Defendants.
13. On October 7, 2009, Dr. Messina released Plaintiff to return to restricted, sit down work only, for four hours per day. Defendants were unable to accommodate Plaintiff's restrictions with a suitable position.
14. On February 18, 2010, Plaintiff underwent a second functional capacity evaluation which indicated that he was able to perform work in the heavy category. However, the evaluation also noted that Plaintiff retained limitations relating to his right ankle including decreased range of motion and strength, and moderate complaints of pain.
15. On February 24, 2010, Plaintiff returned to Dr. Messina who opined that, although the functional capacity evaluation noted that Plaintiff had physical limitations related to his right-ankle, Plaintiff should be able to perform his previous job duties with defendant-employer. Accordingly, Dr. Messina released Plaintiff to return to work at full-duty.
16. Additionally, Dr. Messina opined that Plaintiff had again reached maximum medical improvement, and he left unchanged his previously assigned 15% permanent partial disability rating.
17. Dr. Messina opined that Plaintiff had post-traumatic arthritis of his right ankle as a result of his work related injury. He further opined that individuals who have sustained *Page 6 
traumatic injuries to the lower leg will probably experience episodes of chronic swelling based on how much they are on their feet and their level of activity.
18. As of February 24, 2010, Plaintiff had not returned to work for Defendant-Employer due to the fact that no diesel technician position has been available. Cecil Hill is Defendant-Employer's Vice-President in charge of all operations in the Carolinas, including the branch where Plaintiff worked. Mr. Hill testified that, because of the economic downturn at the time, Defendant-Employer underwent a comprehensive workforce reduction, including at its Wilmington, North Carolina location.
19. Plaintiff attempted to obtain employment in the fields of vehicle maintenance and equipment maintenance, but has been unsuccessful. The Full Commission finds, based upon the preponderance of evidence in view of the entire record, that Plaintiff's job search was reasonable under the circumstances.
20. On August 19, 2010, Plaintiff was examined by Dr. Michael Marushack for a second opinion. Dr. Marushack noted that, while his fracture had healed, Plaintiff had residual degenerative changes in his right-ankle joint. In addition, Dr. Marushack assigned plaintiff a twenty percent (20%) permanent partial disability rating to his right leg.
21. As the result of his compensable injury by accident on June 23, 2006 and ongoing physical limitations resulting therefrom, including his post-traumatic right-ankle arthritis, Plaintiff was temporarily totally disabled from any employment from February 24, 2010 and continuing.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following: *Page 7 
 CONCLUSIONS OF LAW
1. On June 23, 2006, Plaintiff sustained an injury by accident arising out of and in the course of his employment with Defendant-Employer involving his right foot and ankle. N.C. Gen. Stat. § 97-2(6).
2. Defendants admitted the compensability of Plaintiff's injury by filing a Form 60. However, the Form 60 does not create a presumption of continuing disability, and therefore the burden of proving disability remains with Plaintiff. Sims v. Charmes/Arby's RoastBeef, 142 N.C. App. 154, 542 S.E.2d 277, disc. reviewdenied, 353 N.C. 729, 550 S.E.2d 782 (2001).
3. An employee may meet his burden of proving continuing disability in one of four ways: (1) the production of medical evidence that she is physically or mentally, as a consequence of the work-related injury, incapable of work in any employment; (2) the production of evidence that she is capable of some work, but that she has, after a reasonable effort on her part, been unsuccessful in her effort to obtain employment; (3) the production of evidence that she is capable of some work but it would be futile because of pre-existing conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that she has obtained other employment at a wage less than that earned prior to the injury. Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993). When a plaintiff meets his burden of showing disability, the burden then shifts to defendant to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms, Inc.,143 N.C. App. 259, 545 S.E.2d 485 (2001).
4. In the present case, Plaintiff met his initial burden to show that he is disabled. Plaintiff was capable of some work but, after a reasonable effort on his part, has been *Page 8 
unsuccessful in his efforts to obtain suitable employment.Russell v. Lowes Product Distribution,108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993).
5. Defendants have not shown that suitable jobs are available for Plaintiff and that Plaintiff is capable of obtaining a suitable job, taking into account Plaintiff's physical and vocational limitations.Demery v. Perdue Farms, Inc.,143 N.C. App. 259, 545 S.E.2d 485 (2001).
6. Based upon the totality of the credible vocational and medical evidence of record, and as the result of his June 23, 2006 injury by accident and ongoing physical limitations, including his post-traumatic right-ankle arthritis, Plaintiff is entitled to be paid by Defendants ongoing total disability compensation at the rate of $730.00 per week continuing from February 24, 2010 through the present and until such time as he returns to work or further Order of the Commission. N.C. Gen. Stat. § 97-29; Russell v. Lowe'sProduct Distribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
7. Plaintiff is entitled to have Defendants pay for all medical expenses incurred or to be incurred as a result of his compensable injury by accident which relate to his right foot and ankle, including his post-traumatic right-ankle arthritis, when the medical bills have been approved according to established Industrial Commission procedures. N.C. Gen. Stat. §§ 97-25; 97-25.1.
8. Plaintiff is entitled to have Defendants provide vocational rehabilitation services, and Plaintiff shall cooperate with the same. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing Findings of Facts and Conclusions of Law, the Full Commission enters the following: *Page 9 
 AWARD
1. Defendants shall pay to Plaintiff ongoing total disability compensation at the rate of $730.00 per week from February 24, 2010 through the present and continuing until such time as he returns to work or further Order of the Commission. This compensation is subject to the attorney's fee approved herein.
2. Defendants shall pay for all related medical expenses incurred or to be incurred by Plaintiff as a result of his compensable injury by accident which relate to his right foot and ankle, including his post-traumatic right-ankle arthritis, when the medical bills have been approved according to established Industrial Commission procedures.
3. Defendants shall provide vocational rehabilitation services to Plaintiff in an effort to return him to gainful employment, and Plaintiff shall cooperate with such efforts.
4. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded herein is approved for counsel for Plaintiff. From the compensation having accrued, this fee shall be deducted from the amounts due Plaintiff and paid directly to counsel for Plaintiff, with counsel for Plaintiff receiving every fourth check thereafter.
5. Defendants shall pay the costs.
This the ___ day of July, 2011.
 S/___________________ LINDA CHEATHAM COMMISSIONER
CONCURRING: *Page 10 
 S/___________________ PAMELA T. YOUNG CHAIR
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1